IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 17-cr-00047-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**ANTHONY DANIELS**,

    Defendant.

---

**GOVERNMENT'S SENTENCING STATEMENT**
_____

The United States of America, by and through Jason St. Julien and Peter McNeilly, Assistant United States Attorneys, hereby submits the following post-trial Sentencing Statement pursuant to D.C.COLO.LCrR 32.1(a). The Government reserves the right to respond to the defendant's Sentencing Statement and to Probation's Presentence Investigation Report pursuant to U.S.S.G. § 6A1.3(a).

## BACKGROUND

On the night of November 30, 2016, Aurora Police Department ("APD") Officer VanDyke and APD Task Force Officer ("TFO") Pearson conducted routine patrol in the area of N. Galena St. and E. Colfax Ave. in Aurora, Colorado. The officers were part of APD's Gang Intervention Unit and were in an unmarked Dodge Caravan equipped with an audible siren and red and blue emergency lights.

At approximately 11:12 p.m., officers noticed a Chevrolet El Camino, bearing Colorado license plate number 085HPQ (*expiration date of 10/2021*) traveling eastbound on E. Colfax Ave. The car caught the officers' attention. It appeared to have

1

a seriously altered suspension system; so much so that the car nearly bounced out of its lane when it hit bumps on the roadway. Officer VanDyke conducted a license plate check through the mobile data terminal. The check revealed that there was no record of that specific license plate with the Colorado Department of Motor Vehicles ("DMV"). TFO Pearson then called the DMV and spoke with DMV employee "J." J works in the DMV Master Files Department and conducted a secondary check on the license plate. J confirmed that there was no record of the license plate.

The officers then initiated a traffic stop near the intersection of Havana St. and Del Mar Parkway. TFO Pearson approached the driver's side and Officer VanDyke approached the passenger side. As they approached, the car abruptly moved forward several feet. TFO Pearson ordered the driver, Anthony Daniels, to stop the car. Daniels stopped the vehicle and opened the driver's side door.

Daniels was on a cell phone speaking to an unknown person while TFO Pearson repeatedly ordered him to turn the car off. Daniels continued to talk on his cell phone and did not turn the car off. Daniels turned the car off when TFO Pearson stood directly next to him and ordered him to turn the car off. Shortly after Daniels turned the car off, Officer VanDyke told TFO Pearson that a gun was in the car. TFO Pearson immediately drew his firearm and ordered Daniels to put his hands on his face. TFO Pearson then removed Daniels from the car, handcuffed him, and placed Daniels into custody while Officer VanDyke provided cover.

Daniels refused to give his name to the officers and refused to answer basic questions. Daniels made, *inter alia*, the following statements:

- "I have the right to protect myself . . . I need to protect me . . . I need to protect myself from people like you too" (*in response to TFO Pearson stating that Officer VanDyke saw the gun and that Daniels did not follow orders*);
- "Yes, I'm Moor. I can protect myself as property from you" (*in response to TFO Pearson asking, "Is that why you have a firearm? To protect yourself?*);
- "I have the right to bear arms;"
- "I have the right to protect myself and arm myself;" and,
- "I have a right to travel and protect myself for liberty."

Daniels explained that he was not a United States citizen and therefore not subject to its laws. Daniels also stated that the officers had no legal justification to stop and detain him.

Officer VanDyke found a credit card in Daniels' wallet and ran his name through the Police Information Management System ("PIMS"). Officer VanDyke found Daniels' information, identified Daniels' picture, and confirmed Daniels' identity. Officer VanDyke then ran a criminal history check and found that Daniels is a previously convicted felon. Further, Daniels was under a protection order prohibiting him from possessing a firearm and ammunition. TFO Pearson retrieved the handgun from Daniels' car. The handgun was between the front driver's side and passenger's side seat. The firearm is a Hi-Point, Model CF380, .380 caliber pistol, bearing serial number P8098420. The officers placed Daniels under arrest for several state charges, including possession of a weapon by a previous offender.

On February 27, 2017, a Grand Jury returned an Indictment [ECF No. 3] charging Daniels with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

## JURY TRIAL AND CONVICTION

A three-day jury trial commenced on Monday, July 10, 2017. Count One of the Indictment [ECF No. 3] charges Daniels as follows:

> On or about November 29, 2016, in the State and District of Colorado, the defendant, ANTHONY DANIELS, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm in and affecting interstate commerce; in violation of Title 18, United States Code, Section 922(g)(1).

ECF No. 1. On Thursday, July 13, 2017, the jury returned a guilty verdict. *See* ECF Nos. 61 & 76. A Sentencing Hearing is set for October 11, 2017 at 9:30 a.m. *See* ECF No. 61.

## ADVISORY GUIDELINE COMPUTATION

The Government's guideline calculation is set forth below.

A. The base guideline is §2K2.1(a)(2), with a base offense level of **24** because the defendant committed the instant offense subsequent to sustaining two felony convictions for crimes of violence.[1]

B. No specific offense characteristics in §2K2.1(b) apply.

C. There are no victim-related, role-in-offense, obstruction, and/or multiple count adjustments.

---

[1] *Aggravated Robbery – Use of a Deadly Weapon* in Denver County District Court Case Number 1995CR2812 and *Robbery* in Adams County Combined Court Case Number 2009CR1918 are both "crimes of violence" under USSG §4B1.2 and are both counted pursuant to USSG §4A1.1(a).

4

D. The defendant does not receive any adjustment for acceptance of responsibility under §3E1.1 because he put the Government to its burden of proof at trial by denying the essential factual elements of guilt. None of the defendant's pretrial statements or conduct, nor his theory of innocence at trial, support the idea that, despite going to trial, he has somehow accepted responsibility for his criminal conduct.

E. The Government understands that its computation of the defendant's criminal history is tentative and that the criminal history category is ultimately determined by the Court based on the defendant's prior convictions. Based on the information currently available to the Government, the Government estimates the defendant's criminal history category is **IV** (8 points).[2]

F. Assuming the criminal history facts known to the parties are correct, the armed career criminal statute does not apply.

G. <u>Imprisonment</u>: The advisory guideline range of imprisonment resulting from an offense level of **24** and the above criminal history category **IV** is 77 – 96 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level

---

[2] The defendant receives three criminal history points, pursuant to U.S.S.G. § 4A1.1(a), for his conviction and sentence for *Aggravated Robbery – Use of a Deadly Weapon* in Denver County District Court Case Number 1995CR2812 because the defendant's twelve-year sentence of incarceration extended into the fifteen-year period prior to the defendant's commission of the instant offense. The defendant receives three criminal history points, pursuant to U.S.S.G. § 4A1.1(a), for his conviction and sentence for *Robbery* in Adams County Combined Court Case Number 2009CR1918. The defendant receives two additional criminal history points, pursuant to U.S.S.G. § 4A1.1(d), for committing the instant offense while on parole in Adams County Combined Court Case Number 2009CR1918. In total, the defendant should receive eight criminal history points.

estimated above could conceivably result in a range from 51 months (bottom of Category I) to 125 months (statutory maximum for the offense of conviction).

H. <u>Fine</u>: Pursuant to guideline §5E1.2, assuming the estimated offense level of **24**, the fine range for this offense would be $20,000 to $200,000 plus applicable interest and penalties.

I. <u>Supervised Release</u>: Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term shall be at least one year but not more than three years.

**SENTENCING RECOMMENDATION**

**A. Under the § 3553(a) Factors, A Sentence of 96 Months Imprisonment Is Warranted.**

Pursuant to 18 U.S.C. § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." Analysis of those factors warrant a 96 month sentence of imprisonment.

**1. Pertinent § 3553(a) Factors**

**a. § 3553(a)(1): The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

**i. Nature and Circumstances of the Offense**

The Court is well aware of the nature and circumstances of the offense based on the testimony received at the June 14, 2017 Suppression Hearing and the three-day jury trial.

## ii. History and Characteristics of the Defendant

### (a) Criminal History.

Daniels is before the Court on his third felony conviction. He has two prior robbery convictions: (1) *Aggravated Robbery – Use of a Deadly Weapon*, Denver County District Court case no. 1995CR2812; and, (2) *Robbery*, Adams County District Court case no. 2009CR1918. The fact that Daniels possessed a loaded firearm after having sustained two convictions for crimes of violence is concerning. It is even more concerning given the set of facts from Daniels' most recent robbery conviction out of Adams County.

On July 6, 2009, Daniels and an individual identified as B.L., robbed Northeastern Mobile Services located at 9445 E. Colfax Avenue in Aurora, Colorado. Daniels and B.L. entered the store and B.L. stated, "This is a robbery." B.L. pointed a gun at the owner and demanded money. The owner gave B.L. between $200 and $500. As Daniels and B.L. fled, the owner retrieved a firearm and shot B.L. Daniels and B.L. then fled the area in a getaway car driven by a female. The female drove to Rose Medical Center in Denver, Colorado, and dropped off B.L. to be treated for his gunshot wound. The female then parked the car in the hospital parking lot. B.L. died shortly thereafter from the gunshot wound.

Law enforcement officers encountered the female that day at the hospital and she agreed to give a statement. She gave the following statements:

- Daniels and B.L. went to the area to scope a place out for a robbery;
- B.L. told her to park her car in the alley;
- Approximately two minutes after parking in the alley, she heard a gunshot

7

- and Daniels and B.L. came running back to the car;

- She could see that B.L. was injured and was bleeding from the mouth; and,

- ***Daniels said, "I'm gone" and got out the car and ran at 13th and Quebec St.***

The female later identified Daniels from a photograph given to her by law enforcement and told law enforcement where she believed Daniels resided.

Law enforcement began surveillance of an apartment at 17106 East Adriatic Drive. At 10:30 p.m., law enforcement officers encountered Daniels in the parking lot and placed him into custody. Officers found $277 in Daniels' pocket. The bills were stained with blood. Daniels was on parole for his previous aggravated robbery conviction when he committed this robbery.

One would think that after sustaining two robbery convictions, <u>one in which a would-be co-defendant died</u>, an individual would refrain from possessing a gun. That did not happen here. Daniels knowingly possessed a loaded gun (*with a round in the chamber*) and stashed it when he knew law enforcement was on to him.

    **b. § 3553(a)(2)(A) – (C): The Need for the Sentence Imposed to: (1) Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; (2) to Afford Adequate Deterrence to Criminal Conduct; (3) to Protect the Public from Further Crimes of the Defendant; and, (4) to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner**

A 96 month sentence is sufficient to reflect the seriousness of this specific offense, promote respect for the law, and protect the public from further crimes of the defendant.

Daniels was sentenced to 96 months imprisonment in his most recent robbery conviction (*where his would-be co-defendant died*) in Adams County. He did not serve the entirety of that sentence. Apparently that sentence was insufficient, <u>even given the fact that a person died</u>, to deter Daniels from committing the instant offense. In the instant case, the gun was not found in a lock box in Daniels' house or in the trunk of his car. The gun was readily accessible: it was stashed, barrel facing up, between the armrest and passenger seat. According to trial testimony from Daniels' son, the gun has a "hair pin" safety and can switch from on to off very easily. Thus, it makes no sense to believe that the gun was "stored," barrel up, between the armrest and passenger seat. Daniels had the gun on his person and stashed it the moment he saw law enforcement officers.

Despite the fact that his friend died from a gunshot wound while they both committed robbery, Daniels continues to possess guns. That is why the Court should impose a 96 month sentence.

### c. § 3553(a)(4): The Sentencing Range Established by the United States Sentencing Commission Guidelines Manual

A preliminary guideline calculation is set forth on pages 4 through 6. According to the Government's calculation, Daniels' total offense level is 24 and his criminal history category is IV, which results in a guideline range of 77 – 96 months imprisonment. Based on Daniels' history and this case's circumstances, the Government recommends a 96 month sentence of imprisonment to be followed by three years of supervised release.

**B. Conclusion.**

Daniels knowingly possessed a loaded firearm after sustaining two crime of violence convictions. As such, a 96 month sentence is sufficient, but not greater than necessary to comply with the objectives set forth in § 3553(a)(2).

Dated: August 11, 2017.

                                Respectfully submitted,

                                ROBERT C. TROYER
                                Acting United States Attorney

By:   /s/ *Jason St. Julien*
        JASON ST. JULIEN
        PETER MCNEILLY
        Assistant United States Attorneys
        1801 California St., Suite 1600
        Denver, Colorado 80202
        Phone: (303) 454-0100
        Fax: (303) 454-0403
        E-mail: Jason.St.Julien@usdoj.gov
        Attorney for the United States

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of August 2017, I electronically filed the foregoing **GOVERNMENT'S SENTENCING STATEMENT** with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following individuals:

**Robert Pepin**
Email: Bob_Pepin@fd.org

**Laura Suelau**
Email: Laura_Suelau@fd.org

/s/ *Jason St. Julien*
JASON ST. JULIEN
Assistant United States Attorney
1801 California St., Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Jason.St.Julien@usdoj.gov
Attorney for the United States